FILED 15 NOV '23 12:46 USDC-ORP

UNDER SEAL

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:23-cr-00374-IM** |
| **v.** | **INDICTMENT** |
| **HANS MARIA DE GEETERE,** | **50 U.S.C. § 4819(a)(2)(F)**<br>**50 U.S.C. § 4819(a)(2)(C), (E)** |
| **Defendant.** | **Forfeiture Allegation** |
| | **UNDER SEAL** |

**THE GRAND JURY CHARGES:**

**INTRODUCTION**

1. Defendant, **HANS MARIA DE GEETERE** (hereinafter "**DE GEETERE**"), was a Belgian national and the owner of a Belgium-based business known as Knokke Heist Support Corporation Management ("KHSCM").

2. Knokke Heist Support Corporation Management (KHSCM) is a Belgian company engaged in the business of providing supply chain management and procurement services for third parties.

3. U.S. Company 1 was a United States-based company that, among other things, manufactured and sold a specific model of accelerometer (hereinafter "U.S. Company 1 accelerometer(s)"), which is the subject of this Indictment.

4. An accelerometer is an electronic device that measures the vibration, tilt, and acceleration of motion of a structure. Accelerometers are used in industrial, aerospace, and military systems. In aerospace and military applications, they play a critical role in structural testing and monitoring, impact survival tests, flight control systems, weapons and craft navigation systems, active vibration dampening, stabilization, and other systems.

5. In June 2019, pursuant to 15 C.F.R. § 744.21 the Department of Commerce determined that the export of U.S. Company 1 accelerometers to Hong Kong and the People's Republic of China ("China") posed an unacceptable risk of use in, or diversion to, military end use activities in China and, therefore, required a license to export to Hong Kong and China.

**The Export Control Reform Act and Export Administration Regulations**

6. The Export Control Reform Act ("ECRA") provides, among other things, that the national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items be controlled, 50 U.S.C. § 4811, and grants the President the authority to control such activities, *id.* § 4812. ECRA further grants to the Secretary of Commerce the authority to establish the applicable regulatory framework. *Id.* § 4813.

7. The Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774, restricts the export of items for national security, foreign policy, and other interests of the United States as reflected in international obligations and arrangements. 15 C.F.R. § 730.6. It also restricts exports of items that could make significant contributions to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. *Id.* § 742.4. The EAR imposes licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully reexported from one foreign destination to another. *Id.* § 730.7.

8. Pursuant to the EAR, the Department of Commerce may impose licensing requirements for specific exports, reexports, or in-country transfers of any item upon determining an unacceptable risk of use in or diversion to a military end use in China, among other foreign destinations. *Id.* § 744.21(b).

9. Under ECRA, it is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any regulation, order, license, or authorization issued pursuant to ECRA, including specific prohibitions described therein. 50 U.S.C. § 4819(a)(1). Among other things, it is unlawful for any person to order or buy any item that is to be exported from the United States, or is otherwise subject to the EAR, with knowledge that a violation of the EAR has occurred, is about to occur, or is intended to occur in connection with the item unless valid authorization is obtained therefor. 50 U.S.C. § 4819(a)(2)(E).

**COUNTS 1-4**
**(False Statements)**
**(50 U.S.C. § 4819(a)(2)(F)(i))**

10. All previous paragraphs of this Indictment are incorporated herein.

11. On or about April 9, 2021, U.S. Company 1 shipped approximately $13,249 worth of accelerometers to a German reseller ("Reseller") to fulfill an order for KHSCM, which claimed that the end user of the accelerometers was in Belgium. Exporting the accelerometers to Belgium did not require a license.

12. On or about April 14, 2021, Customs and Border Protection ("CBP") and the Department of Commerce, Bureau of Industry and Security ("BIS"), Office of Export Enforcement ("OEE") detained the shipment for inspection to confirm the purported end user and to avoid potential diversion of the accelerometers and potential improper military use. OEE

contacted the Reseller regarding the shipment and requested that the Reseller's customer complete a Department of Commerce form BIS-711.

13. The BIS-711 form, titled "Statement by Ultimate Consignee and Purchaser," asks for information (1) identifying the end user of the exported items and (2) identifying how the items will be utilized. The BIS-711 form seeks assurances from the ultimate consignee and purchaser that the items will not be misused, transferred, or reexported in violation of the EAR. The BIS-711 form requires the ultimate consignee and purchaser to certify, among other things, that all of the facts contained in the form are true and correct and to acknowledge that the making of any false statements or concealment of any material fact in connection with the form may result in imprisonment or fine, or both and denial, in whole or in part, of participation in U.S. exports and reexports.

14. On or about April 15, 2021, KHSCM, through **DE GEETERE**, completed the BIS-711 form and associated documents. **DE GEETERE** signed the form as the purchaser. The Reseller obtained those materials from **DE GEETERE** and then provided the documents to an OEE Special Agent in the District of Oregon.

15. The BIS-711 form falsely stated that Agentschap Wegen en Verkeer, a government agency in the Flemish region of Belgium was the ultimate consignee. The documents contained signatures by two individuals: "Dirk De Vroe," on behalf of Agentschap Wegen en Verkeer, and **DE GEETERE**, who was identified as the CEO of KHSCM.

16. On or about May 12, 2021, **DE GEETERE** called an OEE Special Agent in the District of Oregon to discuss the detained shipment. The Special Agent informed **DE GEETERE** that the shipment had been detained for inspection because the export of U.S. Company 1 accelerometers to Hong Kong and China required a license. **DE GEETERE**

acknowledged that he was aware of those requirements and specifically stated, "Yes, I know, I know, I know."

17. In that same conversation, **DE GEETERE** confirmed that he had provided the end-user documents regarding the Flemish government agency discussed above. **DE GEETERE** again falsely claimed that the Flemish government agency was the end user, and specifically stated that they are "the people who signs for my projects." In truth and fact, as **DE GEETERE** then knew, he intended to reexport the accelerometers to China, including Hong Kong.

18. In that same conversation, the OEE Special Agent asked **DE GEETERE** if he had customers outside of Europe, specifically in China, Hong Kong, or the United Arab Emirates. **DE GEETERE** falsely denied having any such customers, specifically stating, "No, no, no, I'm gonna tell you I only sell in Europe, Belgium." **DE GEETERE** further stated that the Reseller had asked him that same question many times, and that he had told the Reseller the same answer, "no." In truth and fact, as **DE GEETERE** then knew, he sold accelerometers to areas outside of Europe, such as Hong Kong.

19. In that same conversation, **DE GEETERE** made additional false statements to the OEE Special Agent. Specifically, he falsely claimed that the accelerometers were ordered for a series of projects he was working on as part of a "Corona Innovation Fund" in Belgium. **DE GEETERE** further described himself as an inventor, not as a buyer and seller.

20. On or about May 17, 2021, the OEE Special Agent sent an email to **DE GEETERE**, informing him that the Special Agent had not been able to contact the individual named "Dirk De Vroe" who signed the BIS-711 form on behalf of the Flemish government agency, Agentschap Wegen en Verkeer.

///

21. On or about May 18, 2021, the OEE Special Agent received an email purportedly from "Dirk De Vroe," who identified himself as an official of Controle Strategische Goederen, the Flemish agency that regulates export-controlled goods. In the email, "Dirk De Vroe" confirmed the false statements on the BIS-711 form. In truth and fact, **DE GEETERE** had sent this email, claiming to be the fictitious "Dirk De Vroe."

22. On or about the dates specified below, in the District of Oregon and elsewhere, in the course of an investigation and other action subject to the EAR, in connection with the preparation, submission, and issuance of an export control document and a report filed and required to be filed pursuant to the EAR, and for the purpose of and in connection with effecting an export, reexport, and in-country transfer of an item subject to the EAR, defendant **HANS MARIA DE GEETERE** made a false and misleading representation, statement, and certification, and falsified and concealed a material fact, directly to the Department of Commerce, and indirectly through another person, to wit:

| Count | Date | False Statement | Truth |
|---|---|---|---|
| 1 | April 15, 2021 | Defendant **DE GEETERE** provided documents and statements, including a BIS-711 form, purporting to establish a Belgian end user of accelerometers. | Defendant **DE GEETERE** then knew that the end user was not in Belgium and that defendant **DE GEETERE** intended to reexport the accelerometers to an end user located in the People's Republic of China. |
| 2 | May 12, 2021 | Defendant **DE GEETERE** stated that the individual listed as the end user on the documents provided by defendant **DE GEETERE** to the OEE Special Agent was the true end user of the specific accelerometers and was the "[person] who signs for my projects." | Defendant **DE GEETERE** then knew the Belgian Government was not the end user of the accelerometers and defendant **DE GEETERE** intended to reexport the accelerometers to an end user located in the People's Republic of China. |

| | | | |
|---|---|---|---|
| 3 | May 12, 2021 | Defendant **DE GEETERE** stated: "I only sell in Europe." | Defendant **DE GEETERE** then knew he previously did and intended to continue to reexport accelerometers to end users located in the People's Republic of China. |
| 4 | May 18, 2021 | Defendant **DE GEETERE** caused an email to be sent to an OEE Special Agent from "team.dirk.devroe@ecologic-vlaanderen.vlaanderen" containing statements and documents purporting to establish a Belgian end user of the U.S. Company 1 accelerometers. | Defendant **DE GEETERE** then knew the end user was not in Belgium and defendant **DE GEETERE** intended to reexport the accelerometers to an end user located in the People's Republic of China. |

All in violation of Title 50, United States Code, Section 4819(a)(2)(F).

**COUNT 5**
**(Obtaining Goods in Violation of the Export Administration Regulations)**
**(50 U.S.C. § 4819(a)(1), (a)(2)(C), (a)(2)(E), (b))**

23. All prior paragraphs of this Indictment are incorporated herein.

24. On or about May 3, 2022, **DE GEETERE** began contacting an OEE Undercover Agent ("UCA"), posing as a reseller for U.S. Company 1, about a potential purchase of accelerometers from U.S. Company 1. **DE GEETERE** sent a purchase order for 6,400 units valued at $934,400 and a BIS-711 declaring "V.I.," a Belgian company, as the end user. **DE GEETERE** told the UCA: "Please do everything according to the rules. The Goods [sic] are EAR99 […]. The final destination is Belgium." The UCA offered to apply for an export license to obtain a determination that a license was indeed not required to avoid problems during shipping.

25. On or about May 23, 2022, **DE GEETERE** asked the UCA to commence the license application, writing in part, "We are told from day one that CHINA is a forbidden area. [An identified OEE Special Agent] asked me that five times. I don't sell to China."

26. On or about May 24, 2022, **DE GEETERE** told the UCA that the end user identified on the BIS-711 form was "V.I." and located in Belgium, and that the point of contact for the end user was "Dirk V." Based on that information, on or about May 27, 2022, the UCA applied for and received the export license, which was then provided to **DE GEETERE**.

27. On or about June 1, 2022, the UCA confirmed to **DE GEETERE** that BIS did not require an export license because the end user identified by **DE GEETERE** was in Belgium. The BIS licensing determination stated, in part, "You may be able to proceed with this transaction and export the items to this end user for the specified end-use under No License Required."

28. On or about August 17, 2022, **DE GEETERE** deposited $1,460 in a bank account in the District of Oregon. On August 24, 2022, a sample of 10 accelerometers were shipped to **DE GEETERE** in Belgium as partial satisfaction of a purchase order. The shipment was later detained and never delivered.

29. Despite his false representations to the UCA, **DE GEETERE** planned to provide the accelerometers to a Hong Kong entity and the end user he provided was false.

30. On or about August 24, 2022, in the District of Oregon and elsewhere, defendant **HANS MARIA DE GEETERE** did willfully order and buy, and attempt to order and buy, one or more items to be exported from the United States, and otherwise subject to the EAR, that is approximately 6,400 accelerometers, knowing that a violation of the EAR was about to occur, had occurred, and was intended to occur in connection with the export of such items from the United States.

In violation of Title 50, United States Code, Sections 4819(a)(1), (a)(2)(C), (a)(2)(E), and (b).

///

**FORFEITURE ALLEGATION**

Upon conviction of any of the offenses in Counts 1-5 of this Indictment, the defendant shall forfeit to the United States pursuant to 50 U.S.C. § 4819(d)(1)(A), (C) any property used or intended to be used to facilitate the violations; any property constituting or traceable to the gross proceeds taken, obtained, or retained in connection with the violations; and any items or technology exported or intended to be exported as part of the violations. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described.

Dated: November 15, 2023

A TRUE BILL.

[redacted]

OFFICIATING FOREPERSON

Presented by:

NATALIE K. WIGHT
United States Attorney

GREGORY R. NYHUS, OSB #913841
Assistant United States Attorney